UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- X

JOHN GEWEYE,

                              Plaintiff,         **COMPLAINT**

          -against-                       ECF Case

THE CITY OF NEW YORK; DETECTIVE RICARDO    Jury Trial Demanded
MANTILLA, SHIELD #523; UC #C0245; PO JOHN
DOES #1-5; the individual defendants sued individually and
in their official capacity,

                            Defendants.

------------------------------------------------------------------------------- X

## PRELIMINARY STATEMENT

       1.     This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988 for the defendants' commissions of acts under color of law in violation of plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

       2.     Mr. Geweye also brings pendant state-law claims for personal injuries, false arrest and imprisonment, retaliation for free speech, an unlawful search and seizure, intentional and negligent infliction of emotional distress, harassment, unlawful strip-search, unconstitutional conditions of confinement, denial of medical treatment, and to a deprivation of his constitutional, civil, and common law rights.  Mr. Geweye also brings pendant state-law claims for negligence, negligence in the hiring and retention of incompetent and unfit police employees, negligence in the supervision, training and instruction of such employees, and *respondeat superior* liability.

       3.     Mr. Geweye's complaint stems from incident(s) that began on or about December 28, 2013 and continued until on or about January 15, 2014.  During the incident(s), Mr.

Geweye was subjected to a false arrest and imprisonment, retaliation for free speech, an unlawful search and seizure, intentional and negligent infliction of emotional distress, harassment, unlawful strip-search, unconstitutional conditions of confinement, denial of medical treatment, and to a deprivation of his constitutional, civil, and common law rights.

4. During the incident(s), Mr. Geweye was held as a pre-trial detainee at New York County Central Booking and the Manhattan Detention Facility for approximately 3 days while the charges pended against him in the New York County Criminal Court.

5. During Mr. Geweye's incarceration, he was denied access to psychotropic medications that he had been lawfully prescribed prior to his incarceration.  He was forced to take an inadequate substitute medication and he was improperly tapered off of his medications.

6. Defendants' actions were contrary to law, contrary to sound medical practice, and contrary to the norms of a civilized society.  This complaint, arising from these outrageous and unlawful acts, seeks compensatory and punitive damages, costs, disbursements, and attorneys' fees pursuant to applicable federal civil rights law.

## JURISDICTION & VENUE

7. This action arises under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

8. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343, and 1367.

9. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) in that, *inter alia,* the events giving rise to the claim occurred in the Southern District of New York.

**JURY DEMAND**

11. The plaintiff demands a trial by jury on each and every one of his claims as pled herein.

**PARTIES**

12. Plaintiff JOHN GEWEYE is a citizen of the United States and a resident of the State of New York, Montgomery County.

13. Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation organized under the laws of the State of New York.

14. The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court. At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitution and laws of the United States and the State of New York.

15. At all relevant times herein, defendant RICARDO MANTILLA was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

16. At all relevant times herein, defendant MANTILLA held the rank of detective.

17. At all relevant times herein, defendant MANTILLA'S shield number was 523.

18. At all relevant times herein, defendant MANTILLA'S command was the Narcotics Borough Manhattan South.

19. At all relevant times herein, defendant UC #C0245 was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

20. Plaintiff is unable to determine the actual name or rank of defendant UC #C0245.

21. At all relevant times herein, defendant UC #C0245's command was the Narcotics Borough Manhattan South.

22. At all relevant times herein, defendants PO JOHN DOES #1-5 were police officers employed by the NYPD and each was acting in the capacity of agent, servant, and employee of the City.

23. Plaintiff is unable to determine the actual names of PO JOHN DOES #1-5 at this time and thus sues them under fictitious names.

24. The Department of Corrections ("DOC") is the department of the City responsible for, among other functions, operating a number of detention jails. Correctional Health Services ("CHS") is a unit within the New York City Department of Health and Mental Hygiene ("DOHMH"), a City agency. DOHMH, through CHS, is responsible for the provision of medical and mental health care and services to prisoners confined in the City jails, including the Manhattan Detention Facility. DOHMH/CHS, contracts with Corizon Health, Inc., a private corporation, to provide such care and services. DOC and DOHMH/CHS, through their senior officials at the

central office and in each jail facility, promulgate and implement policies, including those with respect to the provision of medical and mental health care, and access to medical and mental and other program services mandated by local law and court orders.  In addition, senior officials in both DOC and DOHMH/CHS are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy.  These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten DOC and DOHMH/CHS polices or customs.  DOC and DOHMH/CHS are also responsible for the appointment, training, supervision, and conduct of all DOC and DOHMH/CHS clinical personnel, including the defendants referenced herein.

25. The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

Arrest and Prosecution Facts

26. On December 28, 2013, at approximately 5:00 p.m., plaintiff was lawfully at and in the vicinity of the intersection of 33rd Street and 8th Avenue in the County and State of New York.

27. Plaintiff was a ticket-holder, awaiting the doors to open to an event at Madison Square Garden.

28. Defendants MANTILLA, UC 0245, and PO JOHN DOES #1-#2 were part of a team of police officers conducting a "buy and bust operation."

29. At that time and place and without any probable cause to do so, one of the defendant officers came up to Mr. GEWEYE and placed excessively tight handcuffs about his wrists.

30. Mr. GEWEYE was physically brought to the ground, despite there being no reason to do so. This caused physical injury to Mr. GEWEYE.

31. Each of the defendant officers was present during, and participated in, Mr. GEWEYE'S arrest.

32. While Mr. GEWEYE was in handcuffs, the defendant officers searched him. No contraband was recovered during this search. No pre-recorded buy money was recovered during this search.

33. After arresting him, a number of the defendant police officers placed Mr. GEWEYE into a waiting police vehicle, in which he was driven around – handcuffed behind his back the entire time – for at several hours.

34. Mr. GEWEYE was eventually transported to an NYPD precinct in New York, New York and booked on charges of criminal sale of a controlled substance in the Third Degree (N.Y. Penal Law § 220.39).

35. Mr. GEWEYE complained to the defendant police officers that the handcuffs were excessively tight and that he needed them to be loosened. The defendant police officers ignored Mr. GEWEYE'S pleas to loosen the cuffs.

36. Mr. GEWEYE was eventually brought by the defendant police officers to Central Booking at 100 Centre Street.

37. While Mr. GEWEYE was at Central Booking at 100 Centre Street, he was subjected to the CITY'S unlawful policy of strip-searching detainees in a non-private manner with non-essential employees and other detainees present.

38. Mr. GEWEYE was forced to completely disrobe and walk through a scanner before being permitted to put his clothes back on.

39. A felony complaint was filed against Mr. GEWEYE charging him with Criminal Sale of a Controlled Substance in the Fifth Degree (N.Y. Penal Law § 220.06) and Criminal Possession of a Controlled Substance in the Fifth Degree (N.Y. Penal Law § 220.31).

40. After more than 24 hours, Mr. GEWEYE was arraigned on the felony complaint and bail was set in the amount of 2,500.

41. The NYPD has formal policies, contained in its Patrol Guide, by which it authorizes strip searches to be carried out in a private manner. The NYPD has formal polices, contained in its Patrol Guide, by which it authorizes the conduct of buy and bust operations, arrest and prosecution of those involved in the sale of narcotics under specific guidelines.

42. This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Complaint, a *de facto* policy and practice of strip searching prisoners, and arresting innocent persons found at the scene of narcotics buy and bust operation other than those specified in the Patrol Guide or NYPD directives.

43. Upon information and belief, while Mr. GEWEYE was incarcerated at the NYPD precinct and in New York Central Booking, awaiting arraignment, the officers who arrested him, acting in concert, and pursuant to a conspiracy, falsely and maliciously told the New York County District Attorney's Office that plaintiff had committed various crimes, and based on the officers' false allegations, the New York County District Attorney's Office prosecuted Mr. GEWEYE in Court under Criminal Docket #2013NY097105.

44. Upon information and belief, the officers who arrested plaintiff maliciously withheld relevant information from the New York County District Attorney's Office, showing that Mr. GEWEYE was innocent of all charges.

45. Thereafter, on or about December 31, 2013 at noon, plaintiff's family posted bail and he was released from custody.

46. Mr. GEWEYE was forced to hire a private attorney in order to defend himself against he false allegations that were brought against him.

47. On January 3, 2014, Mr. GEWEYE appeared in New York Criminal Court in response to the charges. At this appearance, the New York County District Attorney's Office made a representation to the criminal court that the police officers actually recovered no narcotics and that plaintiff was actually innocent of the crimes alleged by the arresting officers.

48. Thereafter, Mr. GEWEYE was required to appear in New York Criminal Court on January 15, 2014 in response to the charges. Mr. GEWEYE was forced to expend money in order to travel from Montgomery County to New York County. On the record, all charges against Mr. GEWEYE were dismissed on motion of the district attorney because the materials that were recovered from a non-party individual were not controlled substances.

49. Mr. GEWEYE was detained at Manhattan Detention Facility from December 28, 2013 until December 31, 2013.

50. The above-stated malicious prosecution was initiated without probable cause to believe that the prosecution would be successful and without regard to Mr. GEWEYE's innocence.

51. The above-stated malicious prosecution was initiated with malice because it was not based upon probable cause.

52. The above-stated malicious prosecution terminated in Mr. GEWEYE's favor on January 15, 2014 when the charges were dismissed and sealed against him.

53. The above-stated malicious prosecution caused a significant post-arraignment liberty restraint on Mr. GEWEYE, namely the 3 days that he spent incarcerated and the two appearances he was required to make before the charges were dismissed and sealed.

Manhattan Detention Facility Facts

54. On December 28, 2013, Mr. GEWEYE was admitted to DOC custody.

55. At the time of his arrest, Mr. GEWEYE was 35 years old.  He suffered from severe depression and anxiety.

56. Mr. GEWEYE indicated to the DOC staff upon his admission that he was currently prescribed XANAX, ZOLOFT, and AMBIEN for his mental health concerns.  Mr. GEWEYE was therefore in obvious need of specialized medical and psychiatric treatment.

57. Despite Mr. GEWEYE's psychotropic needs, he was denied access to his prescribed medications.

58. Based upon the DOC and/or DOHMH/CHS policy, Mr. GEWEYE was not permitted to receive his medically prescribed XANAX.  Instead, Mr. GEWEYE was forced to withdraw from the XANAX with another psychotropic medication, LIBRIUM.

59. Mr. GEWEYE consistently informed the staff at the Manhattan Detention Facility that LIBRIUM was not the proper medication to withdraw from XANAX and that

KLONOPIN or a gradually tapered dosage for XANAX was the proper way to withdraw from XANAX.

60. Despite this request from Mr. GEWEYE, the staff at the Manhattan Detention Facility insisted on providing Mr. GEWEYE with a dosage of LIBRIUM for withdrawing from the XANAX.

61. As a result of this withdrawal, Mr. GEWEYE suffered from anxiety, depression and stress for the entire duration of his incarceration at the Manhattan Detention Facility. Mr. GEWEYE's symptoms exhibited as pacing, nightmares, and panic attacks.

62. As a result of all the foregoing, Mr. GEWEYE suffered physical injuries, emotional distress, embarrassment, humiliation, anxiety, deprivation of his liberty and a violation of his constitutional rights and diverse and specific monetary damages.

### Notice of Claim

63. Notice of Claim was filed in this matter on February 12, 2014.

64. A hearing pursuant to General Municipal Law § 50-H was held on April 22, 2014.

### FIRST CLAIM

### (FALSE ARREST UNDER FEDERAL AND STATE LAW / UNLAWFUL SEARCH AND SEIZURE)

65. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

66. Defendants falsely arrested plaintiff without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime.

67. Defendants unlawfully searched plaintiff and seized him after their unlawful search returned no results for contraband or firearms.

68. Accordingly, defendants are liable to plaintiff for false arrest and unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

69. Accordingly, defendants are liable to plaintiff for false arrest and imprisonment and unlawful search and seizure under New York State law.

## SECOND CLAIM

### (EXCESSIVE FORCE UNDER FEDERAL LAW)

70. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

71. The individuals use of force upon plaintiff, as described herein, and the individual defendants' failure to intervene, was objectively unreasonable and caused plaintiff pain and injury.

72. Accordingly, defendants are liable to plaintiff for using unreasonable and excessive force 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## THIRD CLAIM

### (DENIAL OF THE SIXTH AMENDMENT RIGHT TO A FAIR TRIAL)

73. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

74. Defendants are liable to plaintiff because they created false information likely to influence a jury's decision and forwarded that information to prosecutors, violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is

redressable in an action for damages under the Sixth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## FOURTH CLAIM

### (42 U.S.C. § 1983 CONSPIRACY)

75. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

76. Defendants are liable to plaintiff because they agreed to act in concert to inflict an unconstitutional injury; and committed an overt act done in furtherance of that goal causing damage to plaintiff.

## FIFTH CLAIM

### (42 U.S.C. § 1985 CONSPIRACY)

77. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

78. Defendants are liable to plaintiff because they conspired against plaintiff based on racial or other invidiously discriminatory animus for the purpose of depriving plaintiff of equal protection of the privileges and immunities under the law, and committed an act in furtherance of the conspiracy, which injured plaintiff.

## SIXTH CLAIM

### (MALICIOUS PROSECUTION UNDER STATE AND FEDERAL LAW)

79. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

80. Defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution against plaintiff by knowingly, intentionally, and maliciously providing false statements to prosecutors

and/or the criminal court(s), which alleged plaintiff had committed various crimes; and based upon these false statements, prosecutors prosecuted plaintiff until the case against plaintiff were dismissed in their entirety.

81. The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

82. The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

83. The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff.

## SEVENTH CLAIM

### (FAILURE TO SUPERVISE)

84. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

85. The supervisor defendants are liable to plaintiff because they supervised subordinate individual defendants concerning above-mentioned unlawful acts against plaintiff, and approved their unlawful acts.

## EIGHTH CLAIM

### (NEGLIGENT SUPERVISION, HIRING, MONITORING TRAINING AND RETENTION OF UNFIT EMPLOYEES UNDER STATE LAW)

86. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

87. Defendant City of New York is liable to plaintiff because the occurrence and injuries sustained by plaintiff, were caused solely by, and as a result of the malicious, reckless, negligent, and/or intentional conduct of defendant City of New York, and the NYPD, its agents, servants and/or employees, as set forth above, without provocation on the part of plaintiff

contributing thereto, specifically, the negligent and reckless manner in which said defendant hired, trained, supervised, controlled, managed, maintained, inspected and retained its police officers.

## NINTH CLAIM

### (INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER STATE LAW)

88. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

89. That by virtue of the occurrence and defendants, individually and/or by their agents, servants and/or employees, negligently and/or intentionally inflicted emotional harm upon plaintiff.

90. The defendants' actions against plaintiff were extreme and outrageous and caused plaintiff severe emotional distress.

91. The defendants breached a duty owed to the plaintiff that either unreasonably endangered plaintiff' physical safety, or caused the plaintiff to fear for their own safety.

## TENTH CLAIM

### (NEGLIGENCE, GROSS NEGLIGENCE UNDER STATE LAW)

92. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

93. Defendants are liable to plaintiff because defendants owed plaintiff a cognizable duty of care as a matter of law, and breached that duty.

## ELEVENTH CLAIM

### (STATE LAW RESPONDEAT SUPERIOR CLAIM AGAINST CITY OF NEW YORK)

94. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

95. The individual defendants were acting within the scope of their employment as New York City Police Officers when they committed the above described acts against plaintiff, including falsely arresting, assaulting, and battering plaintiff.

96. The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.

## TWELFTH CLAIM
## (42 U.S.C. § 1983 AGAINST ALL DEFENDANTS)

97. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

98. By reason of the foregoing, and by falsely arresting Mr. GEWEYE, unlawfully searching and seizing him, exerting excessive force against him, unlawfully strip searching him, maliciously prosecuting him, denying him access to adequate medical and mental health care, failing to provide medical and mental health treatment, and/or exhibiting deliberate indifference to Mr. GEWEYE's rights by not acting on information which indicated that unconstitutional acts were occurring, the individual defendants deprived Mr. GEWEYE of rights, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. The individual defendants acted at all relevant times hereto willfully, wantonly, maliciously, and/or with such reckless disregard of consequences as to reveal a conscious indifference to the clear risk of serious injury and pain and suffering to Mr. GEWEYE that shocks the conscience. As a direct and proximate result of these violations of Mr. GEWEYE'S constitutional rights he suffered the damages hereinbefore alleged.

99. The staff and senior members of the Department of Corrections knew that the pattern of abuse and neglect against mentally ill inmates described above existed at the

Manhattan Detention Facility mental health units prior to and including the time of Mr. GEWEYE'S mistreatment. They created or allowed the continuance of the custom under which mentally ill inmates were illegally and excessively denied proper psychotropic medications. Their failure to take measures to curb this pattern of abuse and neglect constituted acquiescence in the known unlawful behavior of their subordinates and deliberate indifference to the rights and safety of the inmates in their care and custody, including Mr. GEWEYE. This conduct was a substantial factor in the continuation of such abuse and neglect and a proximate cause of the constitutional violations alleged in this complaint and of Mr. GEWEYE'S resultant damages, hereinbefore alleged.

100. The Individual Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as NYPD, DOC and/or DOHMH/CHS officers, agents, employees, and/or contracted personnel. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. GEWEYE of his constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

101. Defendant City, through NYPD, DOC, and DOHMH/CHS, and Corizon, through its officers and employees, acting under the pretense and color of law, permitted, tolerated, and were deliberately indifferent to a pattern and a practice of abuse and neglect at Rikers Island by DOC and DOHMH/CHS officers, employees, agents, and contracted personnel at the time of Mr. GEWEYE'S mistreatment. This widespread tolerance of abuse and neglect constituted municipal and corporate policy, practice, and custom, and was a proximate cause of Mr. GEWEYE'S mistreatment, and plaintiff's resultant damages, hereinbefore alleged.

102. At all times material to this complaint, the defendant City, acting through the NYPD and the individual officer defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

103. At all times material to this complaint, the defendant City, acting through the NYPD and the individual defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise, or discipline said defendants.

104. By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which Mr. GEWEYE was abused and neglected, the City and Corizon have deprived Mr. GEWEYE of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

105. As a direct and proximate result of the misconduct and abuses of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

(This Space Left Intentionally Blank)

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a.    Compensatory damages in an amount to be determined by a jury;

    b.    Punitive damages in an amount to be determined by a jury;

    c.    Costs, disbursements, and attorney's fees, pursuant to 42 U.S.C. § 1988; and

    d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    Brooklyn, New York
March 27, 2015

/s
_____

Michael P. Kushner, Esq.
KUSHNER LAW GROUP, P.L.L.C.
16 Court Street, Suite 2901
Brooklyn, New York 11241
(718) 504-1440
mk@kushlawgroup.com